SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
SHANNON Z. PETERSEN, Cal Bar No. 211426
SIEUN J. LEE, Cal Bar No. 311358
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:  858.720.8900
Facsimile:   858.509.3691
Email:        spetersen@sheppardmullin.com
                slee@sheppardmullin.com

Attorneys for Defendant
SMARTBIZ BANK, N.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MECHAUN SCOTT, individually,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>THOMSON REUTERS CORPORATION; SMARTBIZ BANK, N.A., and DOES 1-10 inclusive,<br><br>　　　　　Defendant(s). | Case No. 4:25-cv-04103-RS<br><br>**DEFENDANT SMARTBIZ BANK, N.A.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO STAY ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION**<br><br>[*Concurrently filed with Declarations of Shannon Z. Petersen and Louis daRosa and [Proposed] Order*]<br><br>Date:     August 14, 2025<br>Time:     1:30 p.m.<br>Ctrm:     3<br>Judge:    Chief District Judge<br>　　　　　Richard Seeborg |

SMRH:4938-7243-6052.1

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2  PLEASE TAKE NOTICE that on August 14, 2025, at 1:30 p.m., or as soon

3  thereafter as the matter may be heard, in Courtroom 3 of the above-entitled court,

4  located at Phillip Burton Federal Building & United States Courthouse, 450 Golden

5  Gate Avenue, San Francisco, CA 94102, Defendant SmartBiz Bank, N.A.

6  ("SmartBiz" or "Defendant") will and hereby does move to compel arbitration and

7  stay this action.

8  Pursuant to the Federal Arbitration Act, SmartBiz brings this Motion on the

9  grounds that the Court should compel Plaintiff Mechaun Scott to abide by her

10  agreement to arbitrate her single claim for violation of the Equal Credit Opportunity

11  Act against SmartBiz.  The Court should grant this motion because (1) there is a

12  valid arbitration agreement between the parties, (2) Plaintiff's claim is subject to the

13  arbitration agreement, and (3) the arbitration agreement is otherwise enforceable.

14  This Motion is based on this Notice, the attached Memorandum of Points and

15  Authorities, Declarations of Shannon Z. Petersen and Louis daRosa filed herewith,

16  the exhibits attached to the declarations, the paper and pleadings on file in this

17  action, such other papers as may be submitted prior to or at the hearing of this

18  motion, and argument at the hearing.

19

20  Dated:  July 9, 2025

21  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

22

23

24  By  _____/s/ *Shannon Z. Petersen*_____

25  SHANNON Z. PETERSEN
   SIEUN J. LEE

26  Attorneys for Defendant
27  SMARTBIZ BANK, N.A.

28

-ii-

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................................ 1

II.   FACTUAL BACKGROUND ......................................................................... 2

      A.    Scott Agreed To SmartBiz's Terms Of Service.................................. 2

      B.    SmartBiz's Terms Of Service Include A Broad Arbitration
            Provision ........................................................................................... 3

      C.    Despite Agreeing To Arbitration, Scott Filed This Dispute In
            Court.................................................................................................. 4

      D.    Scott Has Refused To Submit Her Dispute To Arbitration ................. 5

III.  THE COURT SHOULD COMPEL ARBITRATION ..................................... 5

      A.    The Federal Arbitration Act Applies To The Arbitration
            Agreement At Issue Here ................................................................... 5

      B.    Scott Agreed To Arbitration .............................................................. 7

      C.    Scott's Claims Against SmartBiz Are Subject To Arbitration ............. 8

      D.    The Arbitration Provision is Enforceable ......................................... 10

            1.    Scott Cannot Prove Fraudulent Inducement............................. 10

            2.    Scott Cannot Prove Duress ..................................................... 10

            3.    Scott Cannot Prove Unconscionability..................................... 11

                  a.    *There Is No Procedural Unconscionability* ................... 11

                  b.    *There Is No Substantive Unconscionability* ................... 13

      E.    The Fact That Scott Also Asserts Claims Against A Non-Party
            To The Arbitration Provision Does Not Prevent Arbitration .............. 14

IV.   CONCLUSION ............................................................................................ 15

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Cases</u>

4

*Allied-Bruce Terminix Companies, Inc. v. Dobson*
5
    513 U.S. 265 (1995) ............................................................................... 6

6

*Am. Exp. Co. v. Italian Colors Rest.*
    570 U.S. 228 (2013) ............................................................................... 5
7

8

*Armendariz v. Found. Health Psychcare Servs*
    24 Cal.4th 83 (2000) ........................................................................... 11
9

*AT&T Mobility LLC v. Concepcion*
10
    131 S.Ct. 1740 (2011) ................................................................... 10, 13

11

*Bos Material Handling, Inc. v. Crown Controls Corp.*
12
    137 Cal.App.3d 99 (1982) ..................................................................... 9

13

*Cal. Grocers Ass'n v. Bank of Am.*
14
    22 Cal.App.4th 205 (1994) .................................................................. 13

15

*Chavarria v. Ralphs Grocery Co.*
16
    733 F.3d 916 (9th Cir. 2013) ........................................................ 11, 13

17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
18
    207 F.3d 1126 (9th Cir. 2000) .............................................................. 6

19

*Circuit City Stores, Inc. v. Ahmed*
    283 F.3d 1198 (9th Cir. 2002) ...................................................... 12, 13
20

21

*Colgate v. JUUL Labs, Inc.*
    402 F.Supp.3d 728 (N.D. Cal. 2019) .................................................... 7
22

23

*Cox v. Ocean View Hotel Corp.*
    533 F.3d 1114 (9th Cir. 2008) .......................................................... 6, 8

24

*Gatto v. Int'l Vitamin Corp.*
25
    2021 WL 6618734 (C.D. Cal. Dec. 8, 2021) ........................................ 8

26

*In re Holl*
    925 F.3d 1076 (9th Cir. 2019) .............................................................. 7
27

28

*Jope v. Bear Stearns & Co.*
  632 F.Supp.140 (N.D. Cal. 1985) ........................................................................ 14

*Keebaugh v. Warner Bros. Ent. Inc.*
  100 F.4th 1005 (9th Cir. 2024) ........................................................................... 7

*Kilgore v. Keybank, N.A.*
  673 F.3d 947 (9th Cir. 2012) ........................................................... 5, 10, 12, 13

*Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell*
  76 Cal.App.4th 227 (1999) .............................................................................. 8, 9

*Lazar v. Superior Court*
  12 Cal.4th 631 (1996) ....................................................................................... 10

*Little v. Auto Stiegler*
  29 Cal.4th 1064 (2003) ...................................................................................... 14

*Mortensen v. Bresnan Commc'ns*
  LLC, 722 F.3d 1151 (9th Cir. 2013) ................................................................. 10

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*
  460 U.S. 1 (1983) .......................................................................................... 9, 14

*Navarro v. SmileDirectClub, Inc.*
  2022 WL 1786582 (N.D. Cal. June 1, 2022) ..................................................... 8

*Nguyen v. Barnes & Noble Inc.*
  763 F.3d 1171 (9th Cir. 2014) ........................................................................... 7

*Pinnacle Museum Tower Assoc. v. Pinnacle Market Dev. (US), LLC*
  55 Cal.4th 223 (2012) ................................................................................. 11, 13

*Robbins v. Checkr, Inc.*
  2020 WL 4435139 (N.D. Cal. July 30, 2020) .................................................... 7

*Roman v. Superior Court* (2009)
  172 Cal.App.4th 1462 ........................................................................................ 11

*S.S. by & through Stern v. Peloton Interactive, Inc.*
  566 F.Supp.3d 1019 (S.D. Cal. 2021) ................................................................ 6

*Sanchez v. Valencia Holding Co., LLC*
  61 Cal.4th 899 (2015) ................................................................................. 10, 11

*Simula, Inc. v. Autoliv, Inc.*
    175 F.3d 716 (9th Cir. 1999) .................................................................... 9

*Swift v. Zynga Game Network, Inc.*
    805 F. Supp. 2d 904 (N.D. Cal. 2011)................................................. 14

*Tarpy v. Cty. of San Diego*
    110 Cal.App.4th 267 (2003) ............................................................... 10

*Trabert v. Consumer Portfolio Serv., Inc.*
    234 Cal.App.4th 1154 (2015) ............................................................. 13

*United States v. Sutcliffe*
    505 F.3d 944 (9th Cir. 2007) ................................................................ 6

*Valsan Partners Ltd. P'ship v. Calcor Space Fac., Inc.*
    25 Cal.App.4th 809 (1994) ................................................................... 7

<u>Statutes</u>

9 U.S.C. § 1 .................................................................................... 5, 6

9 U.S.C. § 2 .................................................................................... 5, 6

California Consumer Privacy Act................................................................ 3

Equal Credit Opportunity Act......................................................... 1, 5, 9

Federal Arbitration Act .................................................... 5, 6, 8, 10, 13

DEFENDANT SMARTBIZ'S MEMORANDUM IN
SUPPORT OF ITS  MOTION TO COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court should compel Plaintiff Mechaun Scott to arbitrate her claims against Defendant SmartBiz Bank, N.A. ("SmartBiz").  The Court should grant this motion because: (1) there is a valid arbitration agreement between the parties, (2) Scott's single cause of action for violation of the Equal Credit Opportunity Act is subject to the arbitration agreement, and (3) the arbitration agreement is otherwise enforceable.  Accordingly, the Court should grant this motion, compel arbitration, and stay this action against SmartBiz pending arbitration.

First, Scott agreed to arbitration when she visited SmartBiz's website and submitted a business loan application.  During this process, Scott affirmatively checked a box to indicate her agreement to SmartBiz's Terms of Service,[1] which included a binding arbitration provision.  Courts have found that such internet-based consent procedures are sufficient to show mutual assent necessary for contract formation.  Thus, Scott agreed to the Terms of Service, including the arbitration provision.

Second, the arbitration provision covers the dispute here.  The arbitration provision applies to any dispute or controversy between Scott and SmartBiz relating to or arising out the Terms of Service, SmartBiz's website, and/or the relationships that involve, lead to, or result from any of the foregoing.  In her Complaint, Scott alleges that SmartBiz violated the Equal Credit Opportunity Act by denying her "business loan application on the basis of her criminal history information[,] which adversely impacted her on the basis of her race."  Compl. ¶¶ 2, 28–30.  These allegations relate to or arise out of: (1) SmartBiz's Terms of Service, which govern Scott's use of SmartBiz's website, including those related to her business loan application, (2) SmartBiz's website, which Scott used to submit her application, and

---

[1] SmartBiz also refers to the Terms of Service as "Terms and Conditions of Service" on its website.

(3) the resulting activities or relationship, such as SmartBiz's denial of her application.  Thus, the arbitration provision applies to the dispute here.

Third, the arbitration provision here is enforceable.  Scott cannot prove that she was fraudulently induced to enter into the Terms of Service, including the arbitration provision, or that she did so under duress.  Nor can she prove unconscionability, which requires proving both procedural and substantive unconscionability.

For these reasons, the Court should grant this motion and compel Scott to arbitrate her claims against SmartBiz.

## II.    FACTUAL BACKGROUND

### A.    Scott Agreed To SmartBiz's Terms Of Service

SmartBiz provides financial services designed for small businesses, including SBA loans and other types of loans.  Declaration of Louis daRosa ("daRosa Decl.") ¶ 3.  SmartBiz offers a fully digital application process, so applicants can apply for loans for their small businesses through SmartBiz's website.  *Id.*

According to SmartBiz's business records, on April 26, 2023, SmartBiz sent an email entitled, "How to Maximize SBA Loan Proceeds" to Scott at meascott12@gmail.com.  *Id.* ¶ 4, Ex. A.  At the bottom of the email, there was a button stating, "Start My Application," which was hyperlinked to SmartBiz's website.  *Id.*  On the same day, Scott opened the email and clicked the "Start My Application" button, which directed her to "Apply for an SBA or term loan online" page on SmartBiz's website.  *Id.* ¶ 5, Ex. B.  On SmartBiz's website, Scott selected Line of Credit for the financing type, entered a loan amount of $100,000, and provided her name, email, phone number, and legal business name.  *Id.* ¶¶ 5-6, Ex. B.  During this process, the website displayed the following disclosure:

☐ I have reviewed, understand, and agree to the SmartBiz Terms of Service and Privacy Policy. California residents please click here to review your rights under the California Consumer Privacy Act (CCPA).

☐ I consent to the use of automated dialing technology, prerecorded/artificial voice, or text messaging to contact me at the phone number provided about offers from SmartBiz and SmartBiz's lending partners, even if registered on state or federal do-not-call list. I understand consent is not required for this application.

*Id.* ¶ 6.

The terms "SmartBiz Terms of Service," "Privacy Policy," and "click here" appeared in blue, distinguishing them from the surrounding black text, and were each hyperlinked to the corresponding documents—SmartBiz's Terms of Service, Privacy Policy, and a section of the Privacy Policy describing a consumer's rights under the California Consumer Privacy Act in effect at that time. *Id.* ¶ 7, Ex. B. Scott could have accessed and reviewed the Terms of Service by clicking the hyperlink. *Id.* Moreover, on the bottom of the same page and also every page of the website contained a hyperlink to the Terms of Service, which Scott could have also clicked and reviewed. *Id.*

The two boxes appearing next to the disclosures were not pre-checked. *Id.* ¶ 8, Ex. B. Scott affirmatively checked the box, confirming that "[she] ha[s] reviewed, understand[s], and agree[s] to the SmartBiz Terms of Service." *Id.* She then clicked the "Continue to pre-qualify" button located below the disclosures, and subsequently, submitted her loan application online. *Id.*

**B.     SmartBiz's Terms Of Service Include A Broad Arbitration Provision**

The Terms of Service in effect on April 26, 2023 contain an arbitration provision, which states in relevant part:

> **Dispute Resolution and Arbitration**
> YOU AGREE THAT YOU HAVE READ THIS PROVISION CAREFULLY AND UNDERSTAND THAT IT LIMITS YOUR RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND SMARTBIZ. YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO REJECT THIS PROVISION AS PROVIDED IN PARAGRAPH (b) BELOW.

a. Either party to this Agreement, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section (the "Arbitration Provision"), unless you opt out as provided in section (b) below. As used in this Arbitration Provision, "Claim" shall include any dispute, or controversy involving you (or persons/entities claiming through or connected with you), on the one hand, and us (or persons/entities claiming through or connected with us), on the other hand, relating to or arising out of this Agreement, the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including the validity and enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

*Id.* ¶ 9, Ex. C at p. 8 (emphasis in original)

The Terms of Service include instructions on how to opt-out from the arbitration provision as follows:

b. You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt out notice to SmartBiz Loans, 433 California St., Suite 900, San Francisco CA, 94106, Attention: Legal Department, which if received at the specified address within 30 days of the date of your first acceptance of this Agreement. The opt out notice must clearly state that you are rejecting arbitration; identify the Agreement to which it applies by date; provide your name, address, and social security number; and be signed by you. No other methods can be used to opt out of this Arbitration Provision.

*Id.*

**C.    Despite Agreeing To Arbitration, Scott Filed This Dispute In Court**

On May 12, 2025, Scott filed a Complaint against SmartBiz and Thomson Reuters Corporation.  Scott alleges that on or about May 11, 2023, SmartBiz denied her business loan application based on expunged criminal history information and a public record of civil judgment against Plaintiff, both of which were provided by Thomson Reuters.  Compl. ¶¶ 2–3.  Scott alleges "SmartBiz's denial of Plaintiff's business loan application on the basis of her criminal history adversely impacted her

on the basis of her race."[2]  *Id.* ¶ 29.  Scott further alleges that the "use of criminal history information in making credit decisions necessarily has an adverse impact on African Americans" because "African Americans are arrested, charged, convicted, and sentenced disproportionately compared to other races[.]"  *Id.* ¶ 28.  Based on these allegations, Scott contends SmartBiz violated the Equal Credit Opportunity Act ("ECOA").

**D.    Scott Has Refused To Submit Her Dispute To Arbitration**

SmartBiz's records confirm that Scott agreed to arbitrate her disputes by agreeing to the Terms of Service, which includes an arbitration provision.  daRosa Decl. ¶ 10.  Moreover, SmartBiz has no record of receiving any written notice to opt out of the arbitration agreement from Scott.  *Id.*  Accordingly, on June 9, 2025, SmartBiz sent a letter via email to Scott's counsel, demanding that Scott submit her dispute to arbitration.  *See* Declaration of Shannon Z. Petersen ¶ 2, Ex. A.  To date, Scott has not submitted her dispute to arbitration.  *Id.* ¶ 3.

## III.    THE COURT SHOULD COMPEL ARBITRATION

**A.    The Federal Arbitration Act Applies To The Arbitration Agreement At Issue Here**

The Federal Arbitration Act ("FAA") codifies the strong public policy in favor of enforcing arbitration agreements.  9 U.S.C. § 1 *et seq*.  The "overarching principle" of the FAA is that "arbitration is a matter of contract."  *Am. Exp. Co. v. Italian Colors Rest*., 570 U.S. 228, 233 (2013).  It "leaves no place for the exercise of discretion by a . . . court[.]"  *Kilgore v. Keybank, N.A*., 673 F.3d 947, 955 (9th Cir. 2012).  Instead, "[c]ourts must 'rigorously enforce' arbitration agreements according to their terms[.]"  *Am. Exp. Co.*, 570 U.S. at 228.  "The court's role under

---

[2] Notably, Plaintiff does not identify her race anywhere in the Complaint.  While Plaintiff alleges that the use of criminal history information in credit decisions adversely impacts African Americans, she never expressly alleges that she herself is African American.  Thus, it is unclear what Plaintiff's race is based on the face of the Complaint.

1    the Act is therefore limited to determining (1) whether a valid agreement to arbitrate

2    exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  If

3    the response is affirmative on both counts, then the Act requires the court to enforce

4    the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho*

5    *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted).

6        Here, the FAA governs because the parties agreed that it would apply to the

7    arbitration provision and because the Terms of Service evidence transactions

8    involving interstate commerce.  The Terms of Service expressly state, "This

9    Arbitration Provision is made pursuant to a transaction involving interstate

10   commerce and shall be governed by and enforceable under the Federal Arbitration

11   Act ("FAA") and federal arbitration laws."  daRosa Decl., Ex. C at p. 9.

12       Moreover, the FAA applies to any written arbitration agreement contained in

13   a contract "evidencing a transaction involving commerce."  9 U.S.C. § 2.  Courts

14   interpret this language broadly to cover any transaction involving or affecting

15   interstate commerce.  *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S.

16   265, 277 (1995).  Here, the Terms of Service affect interstate commerce because

17   they govern individuals' use of SmartBiz's website, including terms related to

18   applications for business loans submitted on SmartBiz's website.  *See* daRosa Decl.,

19   Ex. C.  Thus, the FAA applies for the additional reason that the Terms of Service

20   evidence transactions involving interstate commerce.  *See S.S. by & through Stern v.*

21   *Peloton Interactive, Inc.*, 566 F.Supp.3d 1019, 1042 (S.D. Cal. 2021) (holding that

22   the FAA applied to the Terms of Service because the services under the Terms

23   "require use of the Internet, [and thus,] involve interstate commerce."); *United*

24   *States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("As both the means to engage

25   in commerce and the method by which transactions occur, the Internet is an

26   instrumentality and channel of interstate commerce.") (internal quotation marks and

27   citation omitted).

28       Accordingly, the FAA applies to the arbitration provision at issue.

**B.      Scott Agreed To Arbitration**

The Court's first task under the FAA is to determine "whether a valid agreement to arbitrate exists[.]"  *Cox v. Ocean View Hotel Corp*., 533 F.3d 1114, 1119 (9th Cir. 2008).  "In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'"  *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Where the record shows that there was an agreement to arbitrate, the trial court is required to order arbitration unless it determines that the petitioner waived its right to arbitration[.]"  *Valsan Partners Ltd. P'ship v. Calcor Space Fac., Inc.*, 25 Cal.App.4th 809, 817 (1994).

Here, California law governs the contract formation issues in this case, as specified by the applicable law provision in the Terms of Service.  *See* daRosa Decl., Ex. C at p. 7 ("This Agreement and all other aspects of your use of the Site shall be governed by and construed in accordance with the laws of the United States and, to the extent applicable, the laws of the State of California, without regard to its conflict of laws rules.").

In California, "internet contracts are classified 'by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps.'"  *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (quoting *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 463 (2021)).  The contract at issue here is a "clickwrap" agreement, which "requires users to click on an 'I agree' box after being presented with a list of terms and conditions of use."  *Id.*  Because they "require an express manifestation of assent to the terms and conditions," *Colgate v. JUUL Labs, Inc.*, 402 F.Supp.3d 728, 763 (N.D. Cal. 2019), "courts generally find that clickwrap agreements are enforceable," *Robbins v. Checkr, Inc.*, 2020 WL 4435139, at *3 (N.D. Cal. July 30, 2020); *see also In re Holl*, 925 F.3d 1076, 1081–82, 1084–85

(9th Cir. 2019) (holding that plaintiff agreed to arbitrate by "click[ing] on the box affirmatively indicating assent to the UPS Technology Agreement and the UPS My Choice Service Terms," which were hyperlinked to the then effective agreement and terms containing an arbitration agreement, in order to enroll in the UPS My Choice program); *Navarro v. SmileDirectClub, Inc*., 2022 WL 1786582, at *4 (N.D. Cal. June 1, 2022) (finding that the plaintiff agreed to the arbitration provision found in the terms of service when he checked a box next to the statement, "I Agree to SmileDirectClub's Informed Consent and Terms & SmilePay Conditions," which was hyperlinked to the full terms of service); *Gatto v. Int'l Vitamin Corp*., 2021 WL 6618734, at *2 (C.D. Cal. Dec. 8, 2021) ("Gatto accepted the GNC Program's Terms and Conditions, including the arbitration agreement, by clicking the check box next to the phrase 'I agree to Terms & Conditions' and then clicking the 'create account' link during the activation of his GNC Program.").

Here, the Terms of Service constitute an enforceable clickwrap agreement under California law. Scott electronically accepted the Terms of Service by affirmatively checking the box next to the statement, "I have reviewed, understand, and agreed to the SmartBiz Terms of Service and Privacy Policy. . . ." daRosa Decl. ¶ 8, Ex. B. The words "SmartBiz Terms of Service" were blue in color and hyperlinked to the Terms of Service in effect at that time. *Id.* The Terms of Service included an agreement to arbitrate, clearly titled and bolded as "Dispute Resolution and Arbitration." *Id.* ¶ 7, Ex. B. Scott had an adequate opportunity to review the Terms of Service. She then clicked the "Continue to pre-qualify" button located below the disclosures, and subsequently, submitted her loan application online. *Id.* ¶ 8. Thus, Scott agreed to be bound by the Terms of Service, including the arbitration provision.

**C.    Scott's Claims Against SmartBiz Are Subject To Arbitration**

The Court's second task under the FAA requires it to determine "whether the agreement encompasses the dispute at issue." *Cox*, 533 F.3d at 1130. "The scope of

-8-

arbitration is a matter of agreement between the parties." *Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell*, 76 Cal.App.4th 227, 230 (1999). "To require arbitration, [Plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).    Courts should compel arbitration of all claims, "unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute." *Bos Material Handling, Inc. v. Crown Controls Corp.*, 137 Cal.App.3d 99, 105 (1982). Indeed, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983); *see Larkin*, 76 Cal.App.4th at 230 ("[D]oubts as to the scope of an agreement to arbitrate are to be resolved in favor of arbitration.").

Here, the arbitration provision encompasses Scott's single cause of action for violation of the ECOA against SmartBiz. The arbitration provision is broadly worded as it essentially applies to any dispute or controversy between the parties. daRosa Decl., Ex B at p. 8. Specifically, the arbitration provision requires the parties to arbitrate "any dispute, or controversy involving you . . ., on the one hand, and us . . ., on the other hand, relating to or arising out of this Agreement, the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing . . ." *Id.*

Scott alleges SmartBiz violated the ECOA when it denied her business loan application on the basis of her race by relying on her criminal history information. Compl. ¶¶ 29, 30. These allegations relate to or arise out of: (1) SmartBiz's Terms of Service, which govern Scott's use of SmartBiz's website, including those related to her business loan application, (2) SmartBiz's website, which provides the

1  platform for submitting business loan applications, and through which Scott

2  submitted her application, and (3) the activities or relationship that results from the

3  foregoing, such as SmartBiz's denial of her application.  Accordingly, Scott's cause

4  of action against SmartBiz falls within the scope of the arbitration provision.

5  **D.   The Arbitration Provision is Enforceable**

6       Arbitration provisions may be "invalidated by generally applicable contract

7  defenses, such as fraud, duress, or unconscionability, but not by defenses that apply

8  only to arbitration or that derive their meaning from the fact that an agreement to

9  arbitrate is at issue."  *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1746

10  (2011); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 906 (2015).

11  Further, "[a]ny general state-law contract defense, based on unconscionability or

12  otherwise, that has a disproportionate effect on arbitration is displaced by the FAA."

13  *Mortensen v. Bresnan Commc'ns*, LLC, 722 F.3d 1151, 1159 (9th Cir. 2013).  "[A]

14  state statute or judicial rule that applies only to arbitration agreements, and not to

15  contracts generally, is preempted by the FAA."  *Kilgore*, 673 F.3d at 956.

16       The arbitration provision here is enforceable, and Scott cannot meet her heavy

17  burden to show otherwise.

18       1.   Scott Cannot Prove Fraudulent Inducement

19       Fraudulent inducement requires proof of the following elements:  (1) a

20  misrepresentation (false representation or fraudulent concealment); (2) knowledge

21  of falsity or scienter; (3) intent to defraud or induce reliance; (4) justifiable reliance;

22  and (5) resulting damages.  *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996).

23  Scott cannot prove any of these elements, much less all of them.

24       2.   Scott Cannot Prove Duress

25       "Duress generally exists whenever one is induced by the unlawful act of

26  another to make a contract or perform some act under circumstances that deprive

27  him of the exercise of free will."  *Tarpy v. Cty. of San Diego*, 110 Cal.App.4th 267,

28

-10-

276 (2003).  Scott cannot prove she was forced into the arbitration provision by any

improper or coercive conduct.  There was no duress here.

       3.    <u>Scott Cannot Prove Unconscionability</u>

      The "doctrine of unconscionability has both a procedural and a substantive

element, the former focusing on oppression or surprise due to unequal bargaining

power, the latter on overly harsh or one-sided results." *Sanchez,* 61 Cal.4th at 910.

Both elements are required, but courts use a "sliding scale" to assess

unconscionability based on the respective degrees of procedural and substantive

unconscionability—thus, the less procedurally unconscionable the contract term, the

more evidence of substantive unconscionability is required to find an agreement

unenforceable.  *See Armendariz v. Found. Health Psychcare Servs*, 24 Cal.4th 83,

114 (2000); *Sanchez*, 61 Cal.4th at 910.  "[I]n order for a court to exercise its

discretion to refuse to enforce a contract or clause under the doctrine of

unconscionability," the agreement must be ***both*** procedurally and substantively

unconscionable.  *Armendariz*, 24 Cal.4th at 114.  "The party resisting arbitration

bears the burden of proving unconscionability."  *Pinnacle Museum Tower Assoc. v.

Pinnacle Market Dev. (US), LLC*, 55 Cal.4th 223, 247 (2012).

      Scott cannot prove either procedural or substantive unconscionability, much

less both.

      *a.    There Is No Procedural Unconscionability*

      "Procedural unconscionability concerns the manner in which the contract was

negotiated and the respective circumstances of the parties at that time, focusing on

the level of oppression and surprise involved in the agreement."  *Chavarria v.

Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).  However, "[t]he adhesive

nature of the contract will not always make it procedurally unconscionable.  When

bargaining power is not grossly unequal and reasonable alternatives exist,

oppression typically inherent in adhesion contracts is minimal."  *Roman v. Superior

Court* (2009) 172 Cal.App.4th 1462, 1470.

There was no oppression or surprise here.  Scott had the opportunity to review the Terms of Service, including the arbitration provision, before she consented to be bound by it.  Scott affirmatively checked the box next to the disclosures, confirming that "[she] ha[s] reviewed, understand[s], and agree[s] to the SmartBiz Terms of Service," including the arbitration provision.  daRosa Decl. ¶ 8, Ex. B.  No one pressured Scott to agree to Terms of Service, including the arbitration provision.

Nor was the arbitration provision buried or hidden.  The Terms of Service were just 10 pages long, and the arbitration provision was found in a separate, bolded section entitled, "**Dispute Resolution and Arbitration**."  daRosa Decl., Ex. C at p. 8.  The arbitration provision described the terms in plain language.  *See id.*

Importantly, the arbitration provision expressly informed Scott regarding her right to opt out on two occasions.  *See Kilgore*, 673 F.3d at 964 (holding that an opt-out right means the arbitration provision is not procedurally unconscionable); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) ("[T]his case lacks the necessary element of procedural unconscionability. [The plaintiff] was not presented with a contract of adhesion because he was given the opportunity to opt-out of the Circuit City arbitration program by mailing in a simple one-page form [within thirty days].").

Here, Scott had the opportunity and right to opt-out of the arbitration provision but did not do so.  Right below the heading "Dispute Resolution and Arbitration," the following language appeared in all caps:  "YOU AGREE THAT YOU HAVE READ THIS PROVISION CAREFULLY AND UNDERSTAND THAT IT LIMITS YOUR RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND SMARTBIZ. YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO REJECT THIS PROVISION AS PROVIDED IN PARAGRAPH (b) BELOW."  *Id.*  The arbitration provision provided detailed instructions on how to opt out of the arbitration provision as follows:

1    You may opt out of this Arbitration Provision for all purposes by
2    sending an arbitration opt out notice to SmartBiz Loans, 433
     California St., Suite 900, San Francisco CA, 94106, Attention: Legal
3    Department, which if received at the specified address within 30 days
     of the date of your first acceptance of this Agreement. The opt out
4    notice must clearly state that you are rejecting arbitration; identify the
     Agreement to which it applies by date; provide your name, address,
5    and social security number; and be signed by you. No other methods
     can be used to opt out of this Arbitration Provision.

6  *Id*.

7          The arbitration agreement here was "not forced upon the Plaintiff[] leaving

8  [her] no meaningful choice." *Kilgore*, 673 F.3d at 964.  A court cannot "relieve

9  Plaintiff[] of [her] contractual obligation to arbitrate by manufacturing

10  unconscionability where there is none." *Id*.  Because there is no procedural

11  unconscionability, the Court "need not address whether the terms" of the arbitration

12  provision "are substantively unconscionable." *Id*.  In any event, for the reasons

13  explained below, the arbitration provision is not substantively unconscionable

14  either.

15                    *b.      There Is No Substantive Unconscionability*

16          "Substantive unconscionability pertains to the fairness of an agreement's

17  actual terms . . . A contract term is not substantively unconscionable when it merely

18  gives one side a greater benefit; rather the term must be so one-sided as to shock the

19  conscience." *Pinnacle*, 55 Cal.4th at 246; *see also Chavarria v. Ralphs Grocery*

20  *Co.*, 733 F.3d 916, 923 (9th Cir. 2013) ("A contract is substantively unconscionable

21  when it is unjustifiably one-sided to such an extent that it 'shocks the conscience.'");

22  *Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal.App.4th 205, 214–15 (1994).

23          Here, the terms of arbitration are bilateral and fair.  None of the terms are so

24  one-sided as to shock the conscience.  The only arbitration term that is even

25  arguably one-sided is the class action waiver, but such waivers are enforceable

26  under the FAA, and in any event, inapplicable here.  *AT&T Mobility LLC v.*

27  *Concepcion*, 131 S.Ct. 1740, 1746 (2011).  Accordingly, there is no substantive

28  unconscionability here, and as a result, the arbitration provision is enforceable.

1    In any event, any offending terms can be severed. daRosa Decl., Ex. C at p. 9

2  ("Any portion of this Arbitration Provision shall be severed or modified if necessary

3  to render it enforceable."); *see Trabert v. Consumer Portfolio Serv., Inc.*, 234

4  Cal.App.4th 1154, 1167 (2015) (severing unconscionable arbitration term and

5  otherwise enforcing arbitration); *Little v. Auto Stiegler*, 29 Cal.4th 1064, 1075

6  (2003) ("[T]he offending provision can be severed and the rest of the arbitration

7  agreement left intact."). Thus, should the Court find any offending terms, SmartBiz

8  requests that the Court sever those terms and otherwise enforce the arbitration

9  provision.

10  **E.**    **The Fact That Scott Also Asserts Claims Against A Non-Party To The**

11         **Arbitration Provision Does Not Prevent Arbitration**

12    "[A]n arbitration agreement must be enforced notwithstanding the presence of

13  other persons who are parties to the underlying dispute but not to the arbitration

14  agreement." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20. Moreover, "[w]here

15  plaintiffs assert both arbitrable and nonarbitrable claims, district courts have,

16  'discretion whether to proceed with the nonarbitrable claims before or after the

17  arbitration and [have] . . . authority to stay proceedings in the interest of saving time

18  and effort for itself and litigants.'" *Jope v. Bear Stearns & Co*., 632 F.Supp.140,

19  144 (N.D. Cal. 1985) (citation omitted) (granting one defendant's motion to compel

20  arbitration and granting co-defendants' motion to stay proceedings pending

21  arbitration of the plaintiffs' remaining claims); *see also Swift v. Zynga Game

22  Network, Inc*., 805 F. Supp. 2d 904, 917–918 (N.D. Cal. 2011) (granting one

23  defendant's motion to compel arbitration and staying litigation as to non-arbitrable

24  claims alleged against other co-defendants).

25    There is a valid arbitration agreement between Scott and SmartBiz that

26  specifically covers Scott's claims against SmartBiz in this action. As a result,

27  regardless of whether Scott's claims against co-defendant Thomson Reuters are

28  arbitrable or not, the Court should compel arbitration of all claims against SmartBiz.

-14-

## IV.    <u>CONCLUSION</u>

For these reasons, the Court should grant this motion, compel arbitration, and stay this action against SmartBiz pending arbitration.

Dated:  July 9, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        _____/s/ Shannon Z. Petersen_____
                        SHANNON Z. PETERSEN
                        SIEUN J. LEE

                        Attorneys for Defendant
                        SMARTBIZ BANK, N.A.

SMRH:4938-7243-6052.1

Case No. 4:25-cv-04103-RS
DEFENDANT SMARTBIZ'S MEMORANDUM IN
SUPPORT OF ITS  MOTION TO COMPEL ARBITRATION